# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-2494

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Eastern District of Arkansas. |
| Eric Wayne Kelley, | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted: April 15, 2011
Filed: August 30, 2011

_____

Before LOKEN and MURPHY, Circuit Judges, and JARVEY,* District Judge.

_____

LOKEN, Circuit Judge.

Eric Wayne Kelley entered a conditional plea of guilty to possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), reserving the right to appeal the district court's[1] denial of his motion to suppress evidence gathered during a

---

*The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa, sitting by designation.

[1]The Honorable J. Leon Holmes, Chief Judge of the United States District Court for the Eastern District of Arkansas.

warrant search of his home. On appeal, he also argues that the court imposed a substantively unreasonable twenty-year consecutive sentence. We affirm.

## I. The Suppression Issue

On the day in question, Kelley was living in Sherwood, Arkansas, under an assumed name; he was wanted in Texas for sexual assault of a child. The United States Marshals Service learned of his likely whereabouts and alerted the Sherwood Police Department, providing a photo of Kelley and advising that he was believed to be keeping the company of a young Middle Eastern boy. Sherwood Police Officer Kevin Webb stopped Kelley for questioning as he drove away from his residence accompanied by a young boy matching the Marshals Service description. Kelley could not provide identification and was placed under arrest when he admitted he was the person in the Texas photo. While being taken to the police station, he repeatedly asked to call his sister, explaining that he needed a prescription for his eyes.

Kelley introduced the child as his "nephew." The boy told Sergeant William Michaels that Kelley was "his friend." Placed in a squad car to keep warm, the boy began crying, concerned he was in trouble. Sergeant Michaels brought the child to the stationhouse, where his mother joined them and consented to an interview. Embarrassed and fearful, the boy told the interviewing police officer that he was often in Kelley's home, and that Kelley had sexually abused and taken nude photographs of the boy that the boy thought were downloaded to a computer in Kelley's bedroom. Sergeant Michaels prepared and presented a warrant affidavit to a state court judge shortly after midnight, requesting that a night-time search for child pornography be authorized because "the objects to be seized are in danger of imminent removal." The judge issued a warrant stating it could be executed day or night. Police executed the warrant at two o'clock that morning, seizing vast quantities of child pornography.

Kelley was tried and convicted of rape in state court based in part on evidence seized during the night-time search. The Supreme Court of Arkansas reversed, concluding that this evidence must be excluded because the warrant and affidavit lacked a sufficient factual basis to justify authorizing a night-time search under Arkansas Rule of Criminal Procedure 13.2(c). Kelley v. State, 269 S.W.3d 326, 329-30, 333 (Ark. 2007). This federal prosecution followed.

Kelley moved to suppress the evidence seized in his home arguing, in part, that the warrant affidavit lacked proper justification to search at night. At the suppression hearing, Sergeant Michaels testified that he told the issuing judge under oath that Kelley had been demanding to call his sister and, based on a prior experience, Michaels was worried that electronic files and other forms of child pornography that were the object of the warrant search would be moved or destroyed. This testimony was consistent with the state court record. See Kelley, 269 S.W.3d at 333 (Brown, J., dissenting). The district court denied the motion to suppress, rejecting each of Kelley's contentions. On appeal, Kelley argues only that the court erred in not suppressing the fruits of an unreasonable night-time search that violated Arkansas Criminal Rule 13.2(c). In considering the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo*. United States v. Howard, 532 F.3d 755, 758 (8th Cir. 2008).

We first put aside Kelley's reliance on the Supreme Court of Arkansas ruling that Sergeant Michaels's affidavit and the state court warrant failed to comply with Arkansas Criminal Rule 13.2(c). "[F]ederal courts do not suppress evidence seized by state officers in conformity with the Fourth Amendment because of state law violations." United States v. Appelquist, 145 F.3d 976, 978 (8th Cir. 1998). "When evidence obtained by state law enforcement officers is offered in a federal prosecution, the legality of the search and seizure is not determined by reference to a state statute, but rather is resolved by [F]ourth [A]mendment analysis." United

States v. Maholy, 1 F.3d 718, 721 n.4 (8th Cir. 1993) (quotation and citations omitted); accord Howard, 532 F.3d at 760.

Like Arkansas Criminal Rule 13.2(c), Rule 41(e)(2)(A)(ii) of the Federal Rules of Criminal Procedure provides: "The warrant must command the officer to . . . execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time." However, as there was no federal involvement, Rule 41(e)(2)(A)(ii) did not govern the actions of the Sherwood Police officers and the state court judge who applied for, issued, and executed the warrant. See Maholy, 1 F.3d at 721. Thus, as in Maholy, the suppression issue in this case turns on the Fourth Amendment analysis.

The Fourth Amendment protects individuals from unreasonable searches and seizures. Police intrusion into the privacy of one's home at night was a concern of the common law before the Fourth Amendment was adopted. Reflecting that concern, our first Congress by statute authorized only daytime searches in 1789. See United States ex rel. Boyance v. Myers, 398 F.2d 896, 898 (3d Cir. 1968). In Wilson v. Arkansas, 514 U.S. 927, 934 (1995), a unanimous Supreme Court held that "in some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment," expressing "little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure." Although this constitutional issue has received surprisingly little attention in numerous night-time search decisions, we have little doubt that in some circumstances an officer's night-time entry into a home might be unreasonable under the Fourth Amendment. See Gooding v. United States, 416 U.S. 430, 462-63 (1974) (Marshall, J., dissenting); Jones v. United States, 357 U.S. 493, 498-99 (1958).

"With few exceptions," the Supreme Court has required that police obtain a warrant before searching a person's home. Kyllo v. United States, 533 U.S. 27, 31

-4-

(2001). Given the long commonlaw and statutory history of requiring that a night-time search of a home be authorized by warrant, when police intend at the time they apply for a warrant to execute the search at night, it is unreasonable under the Fourth Amendment not to disclose that intent to the issuing magistrate and to seek express authorization for the night-time search, as Arkansas Rule 13.2(c) and Federal Rule 41(e)(2)(A)(ii) require.[2] Here, Sergeant Michaels did just that, presenting the state court judge with probable cause to issue a warrant and good cause to authorize an immediate, night-time search. And the warrant expressly authorized execution at any time. Thus, both the warrant and its execution were reasonable under the Fourth Amendment; indeed, they complied with Federal Rule 41. Compare United States v. Harris, 324 F.3d 602, 606 (8th Cir.), cert. denied, 540 U.S. 884 (2003). The motion to suppress was properly denied.[3]

### III. The Sentencing Issue

After the Supreme Court of Arkansas reversed Kelley's conviction, he was retried, again convicted of rape, and sentenced to forty-seven years in prison. The Supreme Court of Arkansas affirmed. Kelley v. State, 327 S.W.3d 373, 374, 384 (Ark. 2009). In sentencing Kelley for this offense, the district court determined that his advisory guidelines range was 151-188 months in prison. After considering the 18 U.S.C. § 3553(a) sentencing factors, the court varied upward to the statutory

---

[2]We do not address the distinct question whether circumstances arising after issuance of a daytime warrant may make night-time execution reasonable.

[3]Because the night-time search was not unreasonable, we need not consider, as we do when Rule 41(e)(2)(A)(ii) applies and has been violated, "whether the night search prejudiced the defendants or whether there was reckless disregard of the proper procedure for a night search by the officials involved." United States v. Berry, 113 F.3d 121, 123 (8th Cir. 1997); see United States v. Bieri, 21 F.3d 811, 816 (8th Cir.), cert. denied, 513 U.S. 878 (1994); United States v. Schoenheit, 856 F.2d 74, 76-77 (8th Cir. 1988).

maximum of 240 months and imposed that sentence to be consecutive to the undischarged state sentence Kelley is serving. On appeal, Kelley argues that imposing an "extraordinary" upward variance and a consecutive sentence are substantively unreasonable, noting that he will be 73 years old before he is even eligible for parole from the state sentence.

"[S]ubstantive appellate review in sentencing cases is narrow and deferential[;] . . . it will be the unusual case when we reverse a district court sentence -- whether within, above, or below the applicable Guidelines range -- as substantively unreasonable." United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (citation omitted); see Gall v. United States, 552 U.S. 38, 41 (2007). The decision to impose a consecutive sentence is "also reviewed for reasonableness . . . similar to an abuse of discretion standard." United States v. Benton, 627 F.3d 1051, 1055-56 (8th Cir. 2010). Here, the district court carefully considered the serious nature of Kelley's predatory offenses, and the need to protect the public from these types of offenses as well as Kelley's history of absconding. Although harsh, the consecutive 240-month prison term is not substantively unreasonable. The district court did not abuse its substantial sentencing discretion.

The judgment of the district court is affirmed.

_____